IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-02653-RPM

QWEST CORPORATION,

       Plaintiff,

v.

COLORADO PUBLIC UTILITIES COMMISSION;
RON BINZ, in his official capacity as Chairman of the Colorado Public Utilities Commission;
JAMES TARPEY, in his official capacity as a member of the Colorado Public Utilities Commission;
MATT BAKER, in his official capacity as a member of the Colorado Public Utilities Commission,

       Defendants,
and

CBEYOND COMMUNICATIONS, LLC,

       Intervenor-Defendant.

## MEMORANDUM DECISION

Invoking the jurisdiction granted by 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1331, Qwest Corporation brought this action as a party aggrieved by a determination of the Colorado Public Utilities Commission ("Commission") interpreting a regulation promulgated by the Federal Communications Commission ("FCC") implementing requirements of the Telecommunications Act of 1996, 47 U.S.C. § 251, *et seq.* ("the Act"). Qwest is an Incumbent Local Exchange Carrier ("ILEC") obligated by the Act to make elements of its network available on an unbundled basis to Competitive Local Exchange Carriers ("CLECs") in its service markets.

Cbeyond Communications, LLC ("Cbyeond") is a CLEC providing telecommunications services to small businesses. It purchases unbundled network elements ("UNEs") from Qwest in Colorado. The Commission is a state regulatory authority responsible for making factual determinations affecting the negotiation of agreements for providing access to the ILEC's elements.

The narrow focus of this case is whether the Commission correctly applied the definition of "business line" in 47 C.F.R. § 51.5 to include only those lines serving businesses and to exclude lines providing non-switched services.

This regulation is a procedural rule to be used in determining where carriers are impaired without access to particular network elements and where unbundling does not frustrate sustainable, facilities based competition pursuant to the FCC's Triennial Review Remand Order ("TRRO") released on February 5, 2005, and approved by the District of Columbia Court of Appeals on June 16, 2006, in *Covad Communications Co. v. FCC*, 450 F.3d 528 (D.C. Cir. 2006).

In paragraph 103 of the TRRO, the FCC adopted business line density as an administrative proxy for determining where significant revenues are available sufficient for competitors to overcome cost barriers to entry to competition with ILECs. Paragraph 105 explains the purpose of the count of business lines by data available to the ILECs:

> Moreover, as we define them, business line counts are an objective set of data that incumbent LECs already have created for other regulatory purposes. The [Bell Operating Company] wire center data that we analyze in this Order is based on ARMIS 43-08 business lines, plus business UNE-P, plus UNE-loops. We adopt this definition of business lines because it fairly represents the business opportunities in a wire center, including business opportunities already being captured by competing carriers through the use of UNEs. Although it may provide a more complete picture to measure the number of business lines served by competing carriers entirely over

>competitive loop facilities in particular wire centers, such information is extremely difficult to obtain and verify. Conversely, by basing our definition in an ARMIS filing required of incumbent LECs, and adding UNE figures, which must also be reported, we can be confident in the accuracy of the thresholds, and a simplified ability to obtain the necessary information.

*TRRO* ¶ 105.

The rule adopted at 47 C.F.R. § 51.5 specifies the methodology to be followed by state regulators in determining impairment of particular wire centers as follows:

>A business line is an incumbent LEC-owned switched access line used to serve a business customer, whether by the incumbent LEC itself or by a competitive LEC that leases the line from the incumbent LEC. The number of business lines in a wire center shall equal the sum of all incumbent LEC business switched access lines, plus the sum of all UNE loops connected to that wire center, including UNE loops provisioned in combination with other unbundled elements. Among these requirements, business line tallies:
>
>(1) Shall include only those access lines connecting end-user customers with incumbent LEC end-offices for switched services,
>
>(2) Shall not include non-switched special access lines,
>
>(3) Shall account for ISDN and other digital access lines by counting each 64 kbps-equivalent as one line. For example, a DS1 line corresponds to 24 64 kbps-equivalents, and therefore to 24 "business lines."

The Commission was persuaded by the contentions of Cbeyond and other CLECs that by adding the sum of all UNE loops connected to the wire center to the tally of business lines as defined in the first sentence, as directed by the second sentence, residential lines are included, inflating the count to the disadvantage of CLECs seeking cost based access to the ILEC facilities. Accordingly, by declaring the rule to be ambiguous, the Commission read out the addition of "all UNE loops connected to that wire center" in the second sentence. It did not have that authority. The rule is not ambiguous. As recognized by the Fifth Circuit Court of Appeals in *Logix Communications, L.P. v. Public Utility Commission of Texas*, 521 F.3d 361 (5th Cir.

2008), the FCC acknowledged that the inclusion of all UNE loops would result in overcounting by including CLEC service to residential customers but the FCC concluded that the policy underlying the TRRO was served by the use of readily available data even though the method was imprecise. That policy decision was within the authority of the FCC and the Commission is bound by it.

The exclusion of non-switched UNE loops from the business line count by the Commission is a correct application of the rule.

The rule is not ambiguous with respect to the exclusion of non-switched lines. The third sentence states that the business line tallies "shall include only those access lines connecting end-user customers with incumbent LEC end-offices for switched services." That sentence follows the second sentence, where the phrase "all UNE loop" appears, and narrows the counting method described in the second sentence.

Qwest argues that the phrase "access line" refers only to switched access lines provided by an ILEC, not the UNE loops that ILECs lease to CLECs. That argument is not supported by the text of the rule or the TRRO. The Fifth Circuit did not address that particular issue in *Logix Communications*. The Commission did not exceed its authority under the Act when it determined that the UNE loop component of the business line tallies should exclude non-switched lines.

Accordingly, it is

ORDERED that judgment shall enter declaring that in Colo. PUC Decision No. R08-0164 (Recommended Decision of Administrative Law Judge, dated February 19, 2008); Colo. PUC Decision No. C08-0969 (Order on Exceptions, dated July 30, 2008), and Colo. PUC

Decision No. C08-1164 (Order on Application for Rehearing, Reargument and Reconsideration, dated October 29, 2008), the Colorado Public Utilities Commission applied an erroneous interpretation of business line as defined in 47 C.F.R. § 51.5 when the Commission found and concluded that residential lines should be excluded from the UNE loop component of the business line tallies; and it is

FURTHER ORDERED that judgment shall enter declaring that in Colo. PUC Decision No. R08-0164 (Recommended Decision of Administrative Law Judge, dated February 19, 2008); and Colo. PUC Decision No. C08-0969 (Order on Exceptions, dated July 30, 2008), and Colo. PUC Decision No. C08-1164 (Order on Application for Rehearing, Reargument and Reconsideration, dated October 29, 2008), the Colorado Public Commission correctly applied the definition of business line set forth in 47 C.F.R. § 51.5 when the Commission found and concluded that lines for non-switched services should be excluded from the UNE loop component of the business line tallies.

Dated: January 28, 2010

BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge